## IN THE MATTER OF THE APPLICATION OF AH SING, for a writ of *habeas corpus.*

### DECIDED: SEPTEMBER 19, 1900.

1. A Chinaman already domiciled in the United States and shipping on board an American vessel as a seaman in an American port, and arriving at an American port on board such vessel, in the usual course of commerce on the sea from such American port, is not a Chinese immigrant under the Chinese Exclusion laws.
2. There is no provision in the Act of Congress, approved April 30th, 1900, entitled an "Act to provide a government for the Territory of Hawaii," authorizing the Collector of Customs at Honolulu to prohibit from landing at the port of Honolulu, a Chinese seaman arriving on board an American vessel sailing from an American port, New York, to said port of Honolulu.

CHINESE EXCLUSION LAW. APPLICATION FOR WRIT OF HABEAS CORPUS.

*Davis & Gear*, attorneys for petitioner.
*John C. Baird*, U. S. District Attorney for Edward P. Stackable, Collector of the Customs of the Port of Honolulu.

ESTEE, J. This is an application for a writ of *habeas corpus* made on behalf of one Ah Sing, a Chinaman, a seafaring man, a cook on board the American ship "Challenger" which sailed from the port of New York in the United States on the 14th day of April, 1900, and arrived at Honolulu on September 1st, 1900; the said petitioner claiming to be unlawfully detained and imprisoned by the Collector of Customs of the port of Honolulu, he having been refused a landing at said port by the

Collector of Customs on the ground that he is an alien and a native of China, and not entitled to land under the Chinese Exclusion Acts.

Upon the hearing it was shown that the American ship "Challenger" sailed from the port of New York on the 14th day of April, 1900, for the port of Honolulu, Hawaiian Islands, and (as shown in the Articles of Shipping) to "such other ports and places in any part of the world as the Master may direct and back to a final port of discharge in the United States. * *"

That Ah Sing, the petitioner, was regularly shipped as cook on board the said ship "Challenger" at the said port of New York, signing the Shipping Articles in Chinese, the Shipping Commissioner placing opposite his Chinese signature, the words Ah Low in English; this being explained by the fact that the petitioner could not read English and did not know that the Commissioner had written his name Ah Low instead of Ah Sing as appears from the testimony of the Master of the ship and the petitioner.

Upon the arrival of the ship at the port of Honolulu, the Master of the vessel discharged her cargo and undertook to pay off the petitioner and discharge him at the port of Honolulu in accordance with the Shipping Articles; but the Collector of the Customs refused to allow petitioner to land.

It was also shown by the evidence at the hearing that the petitioner had been a seafaring man on American ships sailing out of the port of New York, for twenty years. He produced in evidence eight certificates of discharge from different American vessels on which he had sailed. The Master of the ship "Challenger" testified that the petitioner was a sailor; that the petitioner had consulted with him, the Master, about returning to New York; and that he believed the intention of the petitioner was to immediately re-ship upon another vessel as cook or steward to return to that port, and that it was not the intention of the petitioner to remain at the port of Honolulu.

The single question is, do the Chinese Exclusion Acts apply to this petitioner?

Several cases of a similar nature have come before other Courts, some of which we venture to refer to.

It was held in the recent case of the *United States v. Burke,* 99 Fed. Rep. 895, 896, that—

"The legislation contained in the various statutes that have been passed relating to immigration is clearly directed against the immigration into this country of certain classes of persons who come here with the intent to enter into and become a part of the mass of its population. * * *"

In the same case the Court further says after a review of all the statutes:

"That these statutes do not contemplate the exclusion of the crews of vessels which lawfully trade to our ports * * * that alien seamen using the ports of the country in their ships are not alien immigrants * * *"

So in the case of *Chinese Cabin Waiter,* 7 Sawyer 536 (13 Fed. Rep. 286) where Ah Sing, a Chinaman, shipped on the "City of Sydney" and went to Australia, touching at various foreign ports without the certificate required to be obtained by every Chinese laborer, "who shall depart from the United States," Mr. Justice Field held that the petitioner was not within the provision of the Act requiring a certificate as he was all the while upon an American vessel upon which he shipped in the United States for the round voyage to Australia, and return to an American port where he was to be discharged.

It was held in the case of *In re Jack Sen, et al.,* 13 Sawyer, 510, by Judge Sawyer of the 9th Circuit, that—

"A Chinese laborer who ships on an American vessel at an American port, for a round voyage and who does not land at any foreign port, but remains on board until the voyage is completed, does not depart from the United States within the meaning of the exclusion Act of October 1, 1888."

So it was held also in the recent case of *In re Jam,* 101 Fed. Rep., page 989, that—

"The treaty of 1894 with the empire of China, and Acts of Congress of 1888, 1894, excluding 'Chinese laborers' from

coming into the United States, are not applicable to a Chinese seaman who ships as steward aboard a vessel bound for a port in the United States, and who lands with the intention and desire to re-ship as soon as possible."

So also in the very recent case of *In re Lew Young, et al.,* decided in the U. S. Circuit Court for the State of Washington, and not yet reported, where Judge Hanford held that—

"As sea-faring men, the petitioners are not 'Chinese laborers' under the meaning of the Exclusion Acts and they are entitled to their liberty."

In a word, the question presented in this case is not whether this Chinaman is now seeking to illegally enter into the United States at this port as an immigrant, for he is admitted not to be an immigrant as defined by the Exclusion Acts, but rather whether he, as a Chinese seaman, already domiciled in the United States, can legally follow the sea for a livelihood, when he sails on an American ship to an American port and in such port leave the ship with the intent to re-ship for the port of departure. I think he can do this and not violate the terms of the Exclusion Acts.

This Chinaman is not an immigrant under the law, nor is there any provision of the Organic Act for the government of the Territory of Hawaii, approved April 30th, 1900, authorizing the Collector of Customs to prohibit persons in a like position with this petitioner from landing from an American ship, coming in the usual course of commerce on the sea from an American port, New York to the port of Honolulu, which is also an American port.

The Court is of the opinion that the Chinese Exclusion Acts do not apply in this case and that the petitioner is entitled to land.

Let him be discharged from custody.